IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## JOSEPH W. JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-26684     Bernie Weinman, Judge**

_____

**No. W2003-01994-CCA-R3-PC  - Filed April 25, 2005**

_____

The petitioner, Joseph W. Jones, appeals the denial of his petition for post-conviction relief, arguing that his guilty plea was unknowing and involuntary and that he was denied the effective assistance of trial counsel.  Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Arthur E. Horne, III, Memphis, Tennessee, for the appellant, Joseph W. Jones.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Emily Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In accordance with a negotiated plea agreement, on August 20, 2001, the petitioner entered a best interest <u>Alford</u> guilty plea to aggravated rape in exchange for a fifteen-year sentence as a violent offender.  He subsequently filed a timely *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel and an unknowing and involuntary guilty plea.  In an amended petition filed after the appointment of counsel, the petitioner alleged that trial counsel was ineffective for, among other things, failing to investigate the petitioner's mental deficiencies, to prepare him for trial, and to adequately explain to him the consequences of the plea.  The petitioner asserted he lacked the mental competence to intelligently enter his plea and that he would not have pled guilty were it not for the ineffective assistance of counsel.

At the post-conviction hearing, the petitioner testified that he was placed in a "special resource class" in elementary school because he was "a little slow" and that he remained in special education classes all the way through high school. However, he had never been diagnosed by a physician as mentally deficient. According to the petitioner, he was unable to read and could write only "just a little bit." He said he informed counsel of his inability to read and write, but he did not think that counsel believed him. He claimed that counsel met with him only once and that he failed to explain the evidence against him or the motions he was filing in the case. In addition, counsel failed to have DNA testing performed on the evidence in the case despite the petitioner's request that he do so. Finally, the petitioner asserted that he lacked the mental capacity to understand the plea agreement. Thus, although counsel went over it with him, he thought he was pleading guilty in exchange for an eight-year sentence at 30% rather than the fifteen-year sentence at 100% he received.

On cross-examination, the petitioner acknowledged the trial court had refused to accept the original plea agreement that counsel had negotiated, which involved an eight-year sentence for rape. However, he claimed not to remember the reason for the trial court's rejection of the plea; namely, that the trial court did not believe that a plea to rape fit the facts of the case, in which the petitioner and two codefendants allegedly took turns raping and beating the victim. The petitioner complained that counsel failed to call two witnesses he had requested: Hilton Tate, a friend of his father's who could have explained his mental condition and told the jury that he had not made the victim do anything, and Paul Fitzpatrick, who could have told the jury "who [the victim] was and what she do [sic]." The petitioner acknowledged that the victim had identified him as one of her rapists; that he had been informed there was no DNA evidence because the victim had taken a shower after the rape; and that he never told counsel he suffered from a mental disability. The petitioner maintained, however, that he had informed counsel of his inability to read and write and said that a letter he had sent to counsel from jail, which was admitted as an exhibit at the hearing, had been written by his cell mate, whose name he could not remember.

The petitioner's trial counsel testified he had been an attorney since 1997. He said his primary practice area was criminal defense and that he had handled between fifteen and twenty Class A felonies over the years, including two aggravated rape cases. Trial counsel testified his records reflected that he spent 117.75 out-of-court and 14 in-court hours in his preparation for the case, which included filing motions, visiting the location of the alleged rape, contacting or attempting to contact witnesses, and having an associate from his office sit through the trial of one of the codefendants and take notes on the evidence presented. Trial counsel testified he could not remember if he had directly communicated with Hilton Tate or merely left him a message. Regardless, he knew that Tate and other witnesses the petitioner mentioned would have testified that the victim traded sexual intercourse for crack cocaine. Trial counsel explained that such testimony would not have exonerated the petitioner as the State's "whole contention" was that "when the crack ran out, [the petitioner and his codefendants] continued."

Trial counsel testified there was no DNA evidence collected in the case; the victim had reportedly bathed after the rape and the police investigators could not determine which, if any, of the fifty condoms found at the rape scene had been used in the attack. He agreed that the victim had

positively identified the petitioner as one of the three rapists and that the jury in the codefendant's trial had quickly returned a guilty verdict against the codefendant, who received a sentence of at least fifteen years. Trial counsel testified that the petitioner was adamant about going to trial "all the way up to the trial date." However, when the petitioner realized that if he were convicted at trial he could face a potential sentence of twenty to forty years, depending on his range, he decided to accept the fifteen-year sentence offered by the State. Trial counsel said he initially employed the services of an investigator during his preparation of the case but later conducted much of the investigation on his own, which was reflected in out-of-court hours he spent on the case.

Trial counsel testified he explained "[m]ore than once" to the petitioner the criminal process, his rights, the range of punishment, the consequences of his plea, and the limited defenses available to them if they went to trial. According to trial counsel, there were no alibi witnesses and the testimony of the petitioner, who had offered conflicting accounts to counsel of his role in the crime, would have constituted their only defense. Trial counsel said he discussed the petitioner's mental capacity with him, but he did not believe it rose to the level of a defense. He stated that he was well-prepared and ready to take the case to trial on the date the petitioner entered his guilty plea.

On cross-examination, trial counsel listed the various witnesses he had contacted and read aloud from his records, which reflected at least nine one-to-two-hour meetings he had held with the petitioner during the course of his representation. He acknowledged he had not requested a psychological examination of the petitioner but stated that he had not seen the need for any and that none of the petitioner's family or friends ever raised the petitioner's mental competency as an issue. Trial counsel testified he did not move to suppress the petitioner's statement to police because the petitioner did not admit guilt in the statement. Finally, he denied that the petitioner ever informed him of his alleged inability to read or write, testifying that the petitioner had sent several letters to him and at least one letter to the trial court.

The post-conviction court entered written findings of fact and conclusions of law on March 20, 2003, denying the petition for post-conviction relief. Among other things, the court found that trial counsel thoroughly investigated and prepared for the case, negotiated an "extremely favorable" plea agreement and, following the trial court's rejection of that plea, renegotiated a plea for the minimum time the court would allow. The post-conviction court further found that trial counsel adequately discussed and explained the proceedings to the petitioner and that the petitioner was competent to understand what his guilty plea entailed. In sum, the court concluded that the petitioner had failed to meet his burden of showing he was denied the effective assistance of counsel or that his guilty plea was unknowing and involuntary.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing

is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

### III.  Claims of Ineffective Assistance of Counsel

The petitioner argues that counsel was defective for failing to file any motions to suppress, failing to use an investigator throughout the entire case, failing to file a motion for DNA testing, failing to adequately interview "material witnesses for the defense," failing to spend enough time with the petitioner to allow him to "fully understand" his disabilities, and failing to employ the services of a psychologist or other mental health expert.  He asserts that a reasonable probability exists that the outcome of the proceeding would have been different were it not for the cumulative effect of the above alleged deficiencies in representation.

The record in this case, however, fully supports the post-conviction court's finding that the petitioner received effective assistance of counsel.  Trial counsel's testimony, which was obviously accredited by the post-conviction court, established that he spent extensive time in his investigation and preparation for the case, including a number of hours visiting the crime scene and interviewing witnesses and at least nine meetings with the petitioner, each of which lasted at least an hour.  Trial counsel explained he did not request DNA testing because no evidence was collected, and he did not move to suppress the defendant's statement because the petitioner had not admitted any guilt in the statement.  He said that he saw no reason to request a psychological examination of the petitioner and that the petitioner's mental condition did not, in his opinion, rise to the level of a defense. Finally, he explained that there were no alibi witnesses and that the State did not dispute the fact that the victim traded sex for drugs, which was the only information that the witnesses mentioned by the petitioner would have provided.  In sum, there is no evidence that counsel was deficient in his representation or that the petitioner would not have pled guilty were it not for counsel's alleged deficiencies.  We conclude, therefore, that the petitioner is not entitled to post-conviction relief on the basis of his claim of ineffective assistance of counsel.

### IV.  Voluntariness of Guilty Plea

The petitioner also contends his guilty plea was not knowingly, voluntarily, or intelligently entered, asserting that he signed the guilty plea agreement "by mistake," believing that the plea agreement was for an eight-year sentence at 30%.  In support, he cites his testimony that he is unable to read or write, was placed in special education classes throughout his school years, and lacked the mental capacity to understand what he was doing in entering his plea.  The State argues that the evidence supports the post-conviction court's finding that the petitioner freely, voluntarily, and knowingly entered his plea.  We agree with the State.

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977).  State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711.  Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made

aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The record in this case shows that the post-conviction court considered the appropriate factors in determining whether the petitioner's plea was knowing, intelligent, and voluntary. Among other things, the post-conviction court noted the petitioner was effective in communicating at the post-conviction hearing and responded appropriately to the trial court's questions at the guilty plea hearing. The post-conviction court's order states in pertinent part:

> It would appear from the proof presented at the hearing on the petition for post-conviction relief that [the petitioner] had the capacity to understand the proceedings when he entered the guilty plea and the proceedings at this post-conviction hearing.

> The transcript of the guilty plea reflects that [the petitioner] appropriately responded to the questions asked him and had relevant discussions with the judge. The [petitioner] was certainly able to articulate his position at the post-conviction hearing. Even if someone else had written the letter that was introduced at this hearing, the [petitioner] would have had to communicate his thoughts to the writer. . . .

> This Court finds the [petitioner] understood the guilty plea proceedings and freely, voluntarily and knowingly entered his guilty plea and understood the consequences of entering the plea.

As noted by the post-conviction court, the petitioner responded appropriately at the guilty plea hearing, indicating to the trial court that he understood his rights, including those he was waiving by pleading guilty, that no one had coerced or enticed him into pleading guilty, and that he was satisfied with counsel's representation. Although the petitioner expressed unhappiness at the trial court's rejection of the original plea offer of eight years, he affirmed his desire to accept the subsequent plea offer of fifteen years after the trial court informed him his only other choice was to

proceed to trial where he could possibly be acquitted or convicted of a lesser offense, but could also possibly be convicted of the indicted offense and sentenced to anywhere from fifteen to twenty-five years, or twenty-five to forty years, depending on his range. The following colloquy between the trial court and the petitioner reveals that the petitioner understood that it was not the original eight-year offer to which he was entering his guilty plea:

> THE COURT: Do you have any questions you want to ask me about what you're doing?

> [THE PETITIONER]: I was wondering, you know, about this offer; right. And I'm still wondering about the offer. They had two offers on the table. One got took back. I understand that, too. But in my heart and I feel and just telling the honest truth about it, that I think I could -- you know, I could have rolled with the eight and he wouldn't bring the eight down so I said I got no choice. And then like, either take this plea or go to trial. And that's the only -- that's the only offer I got. I feel that it should have -- it should have, you know, been another offer.

> THE COURT: Well, I understand that.

> [THE PETITIONER]: But I ain't got no choice. I'm backed up against the wall. So I got no choice but to enter the guilty plea.

> THE COURT: Well, I understand what you are saying. The choices are either go to trial or take the offer they've offered even if you don't like the offer.

> [THE PETITIONER]: Right.

> THE COURT: But you do have a choice of going to trial. Do you understand that?

> [THE PETITIONER]: Yes, sir.

> THE COURT: And you don't want to do that?

> [THE PETITIONER]: No. I'll go on and take the plea.

At the evidentiary hearing, the petitioner testified that he had continually tested as "slow" in school and had been in special education classes all the way through high school. He admitted, however, that he had never been diagnosed by a physician as mentally deficient. Trial counsel, whose records reflected extensive meetings with the petitioner, testified there was nothing that indicated to him the need for a psychological or mental examination to be performed. Thus, the record supports the conclusion that the petitioner made a knowing, voluntary, and intelligent choice

to plead guilty to the only offer available rather than risk being convicted at trial and receiving a greater sentence. Therefore, he is not entitled to post-conviction relief on this claim.

## **CONCLUSION**

We conclude that the petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was denied the effective assistance of trial counsel. We further conclude that the petitioner's guilty plea was knowing, intelligent, and voluntary. Accordingly, we affirm the denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE